IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| STANFORD FASSETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-01221-CV-W-ODS |
| | ) | |
| VENDTECH-SGI, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

<u>ORDER AND OPINION GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Pending is Defendant Vendtech-SGI, LLC's Motion for Summary Judgment. Doc. #40. For the following reasons, Defendant's motion is granted in part and denied in part.

## I. BACKGROUND[1]

Defendant provides security services at federal facilities pursuant to a federal government contract. Defendant's contract with the Federal Protective Services ("FPS") consists of a Statement of Work, which includes the rights and responsibilities of FPS and Defendant, as well as the qualification and performance standards Defendant's employees must meet. Among other things, the Statement of Work allows FPS to direct the suspension of any of Defendant's employees from working under the contract for a variety of reasons. The Statement of Work also requires Defendant to report any adverse information concerning any of its employees to FPS, and permits Defendant to appeal FPS's decision to remove one of Defendant's employees.

In June 2012, Plaintiff Stanford Fassett, who is over the age of forty and identifies as a black male, began working for Defendant as a Protective Security Officer ("PSO").[2]

---

[1] Unless otherwise noted, the facts contained in this section were uncontroverted by the parties or were obtained from depositions or documents submitted by the parties with their summary judgment briefing. These facts are set forth to provide background information for the Court's ruling, and should not be construed as findings of fact.

Plaintiff is responsible for, among other things, checking the identification of individuals entering the federal building to prevent unauthorized access to the building.

As a PSO, Plaintiff is required to comply with Defendant's job requirements as well as the requirements FPS imposes upon Defendant.[3] Plaintiff received FPS's Security Manual and Resources Tool ("SMART") Book, which includes guidelines regarding work-related conduct and prohibits sexual harassment. According to the SMART Book, "[i]f a government employee or visitor complains to…FPS about sexual harassment by a PSO, FPS will initiate an investigation, and it is probable that the employer will be asked to make a determination about removing the individual(s) from the contract until the investigation is completed." Doc. #41-8, at 6. Defendant's employee handbook also sets forth a zero tolerance policy for harassment, and states "complaints of harassment will be investigated promptly and in an impartial manner." Doc. #44-21, at 3. Pursuant to the collective bargaining agreement, which also governs the terms and conditions of Plaintiff's employment, Defendant will investigate the facts leading to a decision by FPS to request the removal of an employee.

According to Plaintiff, on April 22, 2015, a Caucasian female government employee entered the federal building where Plaintiff worked, walking at an abrupt pace, preventing Plaintiff from seeing her badge. Plaintiff did not recall seeing the employee prior to that date. Plaintiff asked the employee to see her badge; she did not respond. He then tapped the employee's shoulder, and asked to see her badge. The employee turned around, and said, "don't ever touch me." Again, Plaintiff asked the employee to see her badge. She showed her badge, and walked away.

Later that same day, the employee alleged Plaintiff harassed her. The employee reported she showed her badge to the guard before going through the metal detectors. According to the employee, the guard "smiled and touched my shoulder." She told him, "[d]on't ever touch me again," and kept walking. She reported the guard winked at her twice earlier that week or the previous week. Plaintiff was informed of the complaint,

---

[2] Beginning in 2010, Plaintiff worked as a PSO under a contract another entity had with FPS. In June 2012, Defendant was awarded the contract with FPS to provide security services. At that point, Plaintiff became employed with Defendant.
[3] For purposes of summary judgment, it is uncontroverted that Plaintiff did not work for FPS, was not a federal employee, and FPS was not a joint employer with Defendant.

2

and was told to provide a statement. His statement was provided to Defendant and FPS. A coworker also provided a statement. Plaintiff was informed the video footage of the event would be reviewed.

FPS was made aware of the employee's complaint, and directed Defendant to suspend Plaintiff from working under Defendant's contract with FPS, pending the outcome of FPS's investigation into the allegation. Defendant informed Plaintiff of the suspension without pay pending FPS's investigation. On April 27, 2015, Plaintiff answered additional questions about the April 22, 2015 incident. Defendant neither asked FPS to reconsider its directive to remove Plaintiff nor appealed FPS's directive.

While suspended from work, Plaintiff filed a charge of discrimination alleging, among other things, his suspension was discriminatory and retaliatory. Throughout his suspension, Plaintiff contacted Defendant on numerous occasions asking about his suspension. He was told there was nothing he or Defendant could do because FPS was investigating the complaint. Defendant contacted FPS when the alleged incident occurred and again in or about October 2015, inquiring about the investigation. Plaintiff was contacted by a federal investigator in November 2015.

On or about December 8, 2015, Defendant received a letter from FPS stating its investigation was complete, and the results failed to provide sufficient evidence to support the allegation of sexual harassment against Plaintiff. Plaintiff's suspension was lifted, and he returned to work at the same location with the same rate of pay. Plaintiff, however, did not receive the vacation time allotment to which he believes he was entitled based upon his seniority. Plaintiff continues to be employed by Defendant.

On August 10, 2016, Plaintiff filed suit in the Circuit Court of Jackson County, Missouri, alleging Defendant violated the Missouri Human Rights Act ("MHRA") by discriminating against him on the basis of his race and age, and retaliating against him. Doc. #1-1. Defendant removed the matter to this Court. Doc. #1. Defendant now moves for summary judgment in its favor on all of Plaintiff's claims.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." *Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). The Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984). "[A] nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016) (citations omitted).

### III.  DISCUSSION
#### A. Applicability of Amendments to the MHRA

The MHRA was amended, effective August 28, 2017. There are two amendments to the MHRA that, if applicable, affect the Court's consideration of the pending motion: (1) the modification of the causation standard, and (2) the legislature's instruction to courts to apply a burden-shifting framework when analyzing a summary judgment motion.

First, the causation standard was changed from "contributing factor" to "motivating factor." Mo. Rev. Stat. § 213.101.4 (2017) (expressly abrogating the contributing factor standard); Mo. Rev. Stat. § 213.111.5 (2017) (stating a plaintiff bears the burden of proving the alleged unlawful action "was made or taken because of his or her protected classification and was the direct proximate cause of the claimed damages."); Mo. Rev. Stat. § 213.010(2) (2017) (defining "because" or "because of" "as it relates to the adverse decision or action, the protected criterion was the motivating factor"). Second, the amended MHRA requires courts to use the *McDonnell Douglas*

4

burden-shifting framework.[4] Mo. Rev. Stat. § 213.101.3 (2017) (stating "the court shall consider the burden-shifting analysis of *McDonnell Douglas*…to be highly persuasive for analysis in cases not involving direct evidence of discrimination."); Mo. Rev. Stat. § 213.101.4 (2017) (abrogating the Missouri Supreme Court's decision in *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814 (Mo. banc 2007), which abandoned the *McDonnell Douglas* burden-shifting framework as applied to the MHRA).

The Court must determine whether these amendments apply retrospectively to this matter, which was filed in November 2016. The Missouri Constitution states no law "retrospective in its operation…can be enacted." Mo. Const. art. I, sec. 13. "The constitutional bar on civil laws retrospective in their operation has been a part of Missouri law since this State adopted its first constitution in 1820." *Doe v. Phillips*, 194 S.W.3d 833, 850 (Mo. banc 2006). The Missouri Supreme Court presumes "statutes operate prospectively unless legislative intent for retrospective application is clear from the statute's language or by necessary and unavoidable implication." *State ex rel. Schottel v. Harman*, 208 S.W.3d 889, 892 (Mo. banc 2006) (citations omitted). A statute will be applied retrospectively if (1) the legislature clearly expressed an intent that the statute be applied retrospectively, or (2) the statute is procedural or remedial (not substantive) in its operation. *Dalba v. YMCA of Greater St. Louis*, 69 S.W.3d 137, 140 (Mo. Ct. App. 2002) (citation omitted).

The legislature did not clearly express an intent to apply these amendments retrospectively. Thus, the Court must examine whether the amendments are procedural or substantive. "Substantive laws fix and declare primary rights and remedies of individuals concerning their person or property, while remedial statutes affect only the remedy provided, including laws that substitute a new or more appropriate remedy for the enforcement of an existing right." *Files v. Wetterau, Inc.*, 998 S.W.2d 95, 97-98 (Mo. Ct. App. 1999) (citing *Faulkner v. St. Luke's Hosp.,* 903 S.W.2d 588, 592 (Mo. Ct.

---

[4] The *McDonnell Douglas* burden-shifting framework requires the plaintiff to carry the burden of establishing discrimination or retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff meets his or her burden, the burden shifts to the employer to articulate a legitimate, non-discriminatory or non-retaliatory reason for its decision. *Id.* at 802-03. If the employer meets its burden, the burden then shifts back to the plaintiff to show the employer's reason was pretextual. *Id.* at 803-04.

App. 1995)); *compare State ex rel. St. Louis-San Francisco Ry. Co. v. Buder*, 515 S.W.2d 409, 411 (Mo. banc 1974) (precluding retrospective application of the amended wrongful death statute, which removed the recovery limitation) *with State ex rel. LeNeve v. Moore*, 408 S.W.2d 47, 49 (Mo. banc 1966) (allowing retrospective application of a statute that permitted the filing of a tort action in the county where the action accrued, regardless of the parties' residences, because the statute was procedural or remedial, and there was evidence of the legislature's intent to apply the statute retrospectively).

The parties disagree about whether this Court must apply the *McDonnell Douglas* burden-shifting framework. Defendant argues the *McDonnell Douglas* burden-shifting framework should be applied because the MHRA was amended to explicitly instruct courts to follow that framework. Plaintiff argues the Court should not apply the *McDonnell Douglas* burden-shifting framework in this matter because the change in the law is substantive, and therefore, cannot be retrospectively applied.

The parties also disagree about whether Plaintiff must establish Defendant's alleged discriminatory intent was a contributing or motivating factor in Defendant's decisions related to Plaintiff's employment. Plaintiff maintains the contributing factor standard should be applied because the legislature's change in the standard from contributing factor to motivating factor is substantive. In its summary judgment motion, Defendant analyzed Plaintiff's claims under the contributing factor because Plaintiff's "claim first arose when [the contributing factor] standard was still the law." Doc. #41, at 16 n.4. But, in its reply, Defendant argued the "motivating factor" should be applied because the amendments clarified the legislature's intent behind the "because of" language in the MHRA. Doc. #48, at 32-33. Defendant argues this amendment is procedural and should be applied retrospectively. *Id.* Although this Court generally does not consider arguments raised for the first time in a reply brief, it will do so here because the parties disagree about both amendments, and the Court's analysis of both amendments is the same.

A statute's modification of the burden of proof and its requirement that courts shift the burden of proof is substantive. *See Demi v. Sheehan Pipeline Constr.*, 452 S.W.3d 211, 215 (Mo. Ct. App. 2014) (finding the Missouri Supreme Court's alteration to the burden of proof required for a worker's compensation retaliation claim – from

6

"exclusive cause" to "contributing factor" was a substantive change in the law) (citation omitted); *Lawson v. Ford Motor Co.*, 217 S.W.3d 345, 349-50 (Mo. Ct. App. 2007) (finding the modification of the claimant's burden of "substantial factor" to "prevailing factor" to qualify as a compensable injury under the worker's compensation law was substantive, and therefore, could not be applied retrospectively).

The MHRA amendments have only been in effect for months, but a division of this Court and most of the Missouri circuit courts have determined the amendments cannot be applied retrospectively. *Compare Woodruff v. Jefferson City Area Young Men's Christian Ass'n*, No. 17-4244-WJE (W.D. Mo. Jan. 28, 2018) (finding the MHRA amendment pertaining to individual liability is substantive and cannot be applied retrospectively) *and Stubbs v. Indep. Sch. Dist.*, No. 1616-CV11175 (Jackson Cty. Cir. Ct. Jan. 11, 2018) (finding "the change to the MHRA is not retroactive") *and Chabries v. Stephens Coll.*, No. 17BA-CV02997 (Boone Cty. Cir. Ct. Jan. 3, 2018) (finding the amendment eradicating individual liability should not be applied retrospectively because the amendment was substantive) *and Ballard v. O'Reilly Auto. Stores Inc.*, No. 15HE-CC00051-01 (Bates Cty. Cir. Ct. Nov. 27, 2017) (finding "the changes in the [MHRA] affect[] the substantive rights of the Plaintiff[,] and therefore, cannot be applied retroactively.") *and Nicholson v. Scavuzzo's Inc.*, No. 1516-CV22139 (Jackson Cty. Cir. Ct. Sept. 21, 2017) (finding the MHRA amendments pertaining to damages will not be applied retrospectively) *with Gaylor v. Kemco Tool & Mach. Co.*, No. 14SL-CC00054 (St. Louis Cty. Cir. Ct. Oct. 13, 2017) (finding the motiving factor standard and business judgment instruction apply retrospectively but the damages cap does not apply retrospectively). The Court agrees with the vast majority of courts that have considered this issue, and finds these two particular MHRA amendments are substantive in their operation. Accordingly, the Court will not retrospectively apply these MHRA amendments to Plaintiff's claims.

### B. Plaintiff's Claims

When deciding a case under the MHRA, courts are guided by Missouri law and federal employment discrimination case law consistent with Missouri law. *Daugherty*, 231 S.W.3d at 818 (citations omitted). Missouri discrimination safeguards are not

identical to the federal safeguards. *Id.* at 818-19 (citation omitted); *see also Wierman*, 638 F.3d at 1002 (citations omitted) (finding the district court erred in applying federal employment standards to the plaintiff's MHRA claims). "If the wording in the MHRA is clear and unambiguous, then federal case law which is contrary to the plain meaning of the MHRA is not binding." *Id.* (quoting *Brady v. Curators of Univ. of Mo.*, 213 S.W.3d 101, 112 (Mo. Ct. App. 2006)). In considering a summary judgment motion in the context of an MHRA claim, the Court "must determine whether the record shows two plausible, but contradictory, accounts of the essential facts, and the 'genuine issue' in the case is real, not merely argumentative, imaginary, or frivolous." *Daugherty*, 231 S.W.3d at 820 (citation omitted); *see also Carter v. CSL Plasma Inc.*, 63 F. Supp. 3d 1034, 1043 (W.D. Mo. 2014).

**(1) Race Discrimination Claims**

Plaintiff alleges Defendant discriminated against him on the basis of his race when he was suspended without pay, Defendant failed to conduct an appropriate or reasonable investigation into the sexual harassment allegation against him, and Defendant did not award him the vacation time to which he believes he was entitled based upon his seniority. Doc. #1-1, at 8-10. Defendant seeks summary judgment on all of Plaintiff's race discrimination claims. The Court will first consider Plaintiff's race claims associated with his suspension and his allegation that Defendant failed to conduct an appropriate or reasonable investigation.

**(a) Plaintiff's Suspension and Defendant's Alleged Failure to Investigate**

To establish a prima facie case of race discrimination in the employment context, a plaintiff must establish his race was a contributing factor in the employer's decision. *Daugherty*, 231 S.W.3d at 819-20 (citing Mo. Rev. Stat. § 213.010(5) (1998)); *see also Wierman*, 638 F.3d at 1002; Mo. Approved Instruction No. 31.24 (6th ed. Supp. 2017); *McBryde v. Ritenour Sch. Dist.,* 207 S.W.3d 162, 170 (Mo. Ct. App. 2006)).[5] A

---

[5] Defendant contends Plaintiff must also establish he was qualified for his position, and more specifically, he performed his job at a level that met Defendant's legitimate expectations. Plaintiff argues he need only show he was able to perform his job duties.

contributing factor is "a condition that contributes a share in anything or has a part in producing that effect." *Turner v. Kan. City Pub. Schs.*, 488 S.W.3d 719, 723 (Mo. Ct. App. 2016) (quoting *McBryde,* 207 S.W.3d at 170) (internal quotations omitted); *see also Wierman*, 638 F.3d at 1002. The contributing factor standard is less rigorous than the motivating factor standard applied in Title VII discrimination cases. *Denn*, 816 F.3d at 1033 (citing *Daugherty*, 231 S.W.3d at 819). A plaintiff is not required "to present evidence of similarly situated employees…to overcome summary judgment, but this type of evidence can give rise to a factual issue regarding whether a discriminatory reason was a contributing factor…." *Denn*, 816 F.3d at 1034 (citing *Holmes v. Kan. City Mo. Bd. of Police Comm'rs,* 364 S.W.3d 615, 627 (Mo. Ct. App. 2012)).

This Court has viewed the evidence presented by the parties in the light most favorable to Plaintiff, and given Plaintiff the benefit of all reasonable inferences. The Court finds Plaintiff has set forth sufficient evidence that could allow a jury to conclude his race was a contributing factor in Plaintiff's suspension and Defendant's alleged failure to conduct an appropriate or reasonable investigation into the allegation of sexual harassment against Plaintiff. Accordingly, Defendant's motion for summary judgment on Plaintiff's race claims related to his suspension and the failure to investigate the sexual harassment complaint against him is denied.

---

Case law does not provide a definitive answer. *Compare Young v. Am. Airlines, Inc.*, 182 S.W.3d 647, 653 (Mo. Ct. App. 2005) (stating "the relevant analysis focuses on the employee's overall work record and general ability to perform [his or her] job duties, not whether the employee violated a company rule or policy on one occasion, such as in this case.") *and Denn*, 816 F.3d at 1032 (not setting forth a requirement that the plaintiff establish he was qualified for the position) *with Marez v. Saint-Gobain Containers, Inc.*, 740 F. Supp. 2d 1057, 1067-69 (E.D. Mo. 2010) (finding there was a dispute as to whether the plaintiff was qualified to perform her job or whether she was meeting her employer's expectations). However, in *Daugherty*, the Missouri Supreme Court did not set forth a requirement that a plaintiff meet his employer's expectations to establish an MHRA claim. 231 S.W.3d at 820. It stated a plaintiff must prove only his protected classification was a contributing factor in the employer's decision to establish an MHRA claim. *Id*. Also, the Missouri jury instruction does not set forth this requirement. Mo. Approved Instruction 38.01(A) (7th ed. Supp. 2017). In light of *Daugherty, Young, Denn*, and the Missouri jury instruction, this Court will not require Plaintiff to prove he was qualified for his position or was meeting his employer's expectations in order to establish a prima facie case of discrimination.

9

### (b) Plaintiff's Vacation Allotment

Plaintiff's final race discrimination claim is based upon his allegation that he was not awarded, upon return to work after the suspension, the amount of vacation time to which he believes he was entitled based upon his seniority. Defendant argues Plaintiff failed to administratively exhaust this claim, entitling Defendant to summary judgment on this claim. Before filing a lawsuit alleging violations of the MHRA, a plaintiff "must exhaust administrative remedies by timely filing an administrative complaint…." *Alhalabi v. Mo. Dep't of Nat. Res.*, 300 S.W.3d 518, 524 (Mo. Ct. App. 2009) (citations omitted). Administrative exhaustion requires a plaintiff give notice of all discrimination claims in the administrative complaint (or, as the case is here, the charge of discrimination). *Id.* at 525. Administrative complaints are interpreted liberally, and claims are deemed exhausted with regard to all incidents in the administrative complaint as well as incidents reasonably related to the allegations in the administrative complaint. *Id.* (citation omitted).

Plaintiff's charge of discrimination alleges he was suspended because of his race and age, and in retaliation for engaging in protected activity. Doc. #44-11, at 2.[6] Plaintiff also alleged a "continuing action," and stated Defendant "is continuing to take adverse actions toward me as I have been unable to return to work or find another similar job." *Id.* Plaintiff's charge of discrimination does not specifically allege Defendant discriminated or retaliated against him by failing to award him the vacation allotment to which he believes he is entitled. But this is not surprising because that incident had not yet occurred.

There is no evidence Plaintiff further amended his charge of discrimination or filed another charge of discrimination to include his vacation allotment claim. Thus, the Court must determine whether that claim is reasonably related to the allegations in the charge of discrimination. *Alhalabi*, 300 S.W.3d at 525. When viewing the evidence in the light most favorable to Plaintiff and liberally construing charge of discrimination, the Court finds Plaintiff's vacation allotment claim is reasonably related to the allegations

---

[6] The parties also submitted an "amended" charge of discrimination filed in October 2015. Docs. #41-14, 44-11. The parties point to no differences between the two charges, and the Court is unable to discern any significant differences between the two charges. In fact, the "particulars" sections in the charges appear to be identical.

contained in his charge. First, Plaintiff alleged the discrimination and retaliation were continuing, and he specifically claimed Defendant was continuing to take adverse actions against him. Second, the vacation allotment was tied directly to the time Plaintiff worked (or, in this case, did not work). Had Plaintiff not been suspended, there would not be a claim associated with the decreased vacation allotment. Plaintiff, in all likelihood, would have received his full vacation allotment. Thus, the Court finds Plaintiff administratively exhausted his race discrimination claim associated with his vacation allotment,[7] and Defendant's motion for summary judgment based upon failure to exhaust this claim is denied.

As with Plaintiff's other race discrimination claims, the Court has viewed the evidence presented by the parties in the light most favorable to Plaintiff, and given Plaintiff the benefit of all reasonable inferences. The Court finds the record shows plausible, but contradictory, accounts of the facts surrounding Plaintiff's vacation allotment. Accordingly, the Court denies Defendant's motion for summary judgment on Plaintiff's discrimination claim based upon the vacation allotment he received.

### (2) Age Discrimination Claims

Plaintiff alleges his age was a contributing factor in his suspension, and he lost benefits and privileges of employment because of his age. Doc. #1-1, ¶ 37. Plaintiff's age discrimination claim survives summary judgment only "if there is a genuine issue of material fact as to whether his age was a contributing factor" in Defendant's decisions related to his employment. *Daugherty*, 231 S.W.3d at 820 (internal quotation omitted).

Plaintiff argues a reasonable juror could conclude his age was a contributing factor in Defendant's decisions related to Plaintiff's employment because all PSOs who were investigated for conduct issues were over the age of forty, suggesting younger PSOs were not subjected to the same scrutiny as older PSOs. Doc. #44, at 48. This argument is imprecise, unsupported, and insufficient to survive summary judgment.

First, Plaintiff has not "set forth specific facts sufficient to raise a genuine issue for trial." *Nationwide Prop. & Cas. Ins. Co.*, 845 F.3d at 382; Fed. R. Civ. P. 56(c); L.R.

---

[7] Plaintiff also alleges the decreased vacation allotment was retaliatory. For the same reasons set forth above, the Court finds Plaintiff administratively exhausted that claim.

56.1(b)(2). Nothing in the record demonstrates Plaintiff's age was a factor in any of Defendant's decisions. Second, to support his argument that PSOs over the age of forty were treated differently than younger PSOs, Plaintiff's refers the Court to a thirteen-page exhibit (Doc. #44-30), which appears to list the ages of Defendant's active and discharged employees. But a blanket reference to an exhibit, without specifics, does not set forth evidence of a genuine issue of fact. Plaintiff does not identify which individuals the Court should consider. Accordingly, the Court cannot discern who these individuals are, and whether they are similarly situated to Plaintiff. Third, Plaintiff indicates these unidentified PSOs over the age of forty were investigated for "conduct issues," but Plaintiff does not specify the particular "conduct" at issue. Again, without knowing the identity of the individuals and the underlying conduct, the Court cannot determine whether these individuals are similarly situated to Plaintiff. Fourth, setting aside his sweeping assumption that younger individuals were treated more favorably than he was treated, Plaintiff does not set forth any evidence of a similarly situated younger employee being treated more favorably than he was treated.

Plaintiff has not provided evidence of a genuine issue of material fact as to whether his age was a contributing factor in Defendant's decisions. Plaintiff simply relies upon speculation and conjecture, which are not sufficient to survive summary judgment. The Court grants Defendant's motion for summary judgment on Plaintiff's age discrimination claims.

### (3) Retaliation Claims

To establish a prima facie case for retaliation under the MHRA, a plaintiff must establish (1) he complained of discrimination or another practice prohibited by the MHRA, (2) the defendant took an adverse action against him, and (3) a causal relationship existed between his complaint and the adverse action. *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 886 (8th Cir. 2015) (citation omitted); *Soto v. Costco Wholesale Corp.*, 502 S.W.3d 38, 48 (Mo. Ct. App. 2016). A causal relationship exists when "retaliation was a contributing factor to the adverse action." *Denn*, 816 F.3d at 1036 (citation omitted).

### (a) Plaintiff's Suspension

Although the Petition maintains Plaintiff's suspension was retaliatory, Plaintiff conceded, in response to Defendant's summary judgment motion, he did not engage in protected activity before he was suspended. Doc. #44, at 14. Additionally, Plaintiff did not respond to Defendant's argument that it was entitled to summary judgment on that claim, and he did not include his suspension in the list of alleged retaliatory acts taken by Defendant when responding to Defendant's summary judgment motion. By failing to respond to that argument, Plaintiff tacitly concedes that claim. *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009). Further, after reviewing the record, the Court finds no genuine issue of material fact exists with regard to Plaintiff's claim that his suspension was retaliatory. Accordingly, Defendant's motion for summary judgment is granted on this particular claim.

### (b) Allegedly Failing to Investigate and Vacation Allotment

In response to Defendant's summary judgment motion, Plaintiff claims Defendant retaliated against him by failing to investigate or take any action to curtail Plaintiff's lengthy suspension, and eliminating his vacation based on his seniority in 2016. Doc. #44, at 52. Defendant argues it is entitled to summary judgment on these retaliation claims because Plaintiff is alleging those claims for the first time.[8] The Court disagrees; both claims are contained in Plaintiff's Petition. Doc. #1-1, ¶¶ 17, 19, 23, 45-52.

Defendant also contends these claims were not administratively exhausted. The Court already found Plaintiff's vacation allotment claim was administratively exhausted. *See supra*, n.7. Plaintiff's charge of discrimination specifically alleges he has openly opposed the false accusation of harassment, and Defendant continues to take adverse actions against him "as I have been unable to return to work." Doc. #41-14, at 2. Applying the standard set forth *supra*, section III(B)(1), which requires liberal interpretation of charges of discrimination, the Court finds Plaintiff administratively

---

[8] Defendant's reply brief appears to blend arguments that (1) Plaintiff is raising these claims for the first time, and/or (2) Plaintiff failed to administratively exhaust these claims. As such, it is unclear if Defendant is making both arguments. Out of abundance of caution, the Court addresses the arguments separately.

13

exhausted his retaliation claim based upon Defendant's failure to investigate or take action to curtail Plaintiff's suspension.

Finally, Defendant argues it is entitled to summary judgment on these two retaliation claims because they lack merit. Viewing the evidence in the light most favorable to Plaintiff and giving him the benefit of all reasonable inferences, the Court finds Plaintiff has set forth sufficient evidence that could allow a jury to conclude these actions (or inactions) by Defendant were retaliatory. Accordingly, Defendant's motion for summary judgment is denied with regard to Plaintiff's retaliation claims based upon Defendant's alleged failure to investigate or take any action to curtail Plaintiff's lengthy suspension, and his vacation allotment.

### (c) Challenging Plaintiff's Claim for Unemployment Benefits

In response to Defendant's summary judgment motion, Plaintiff also claims Defendant retaliated against him by challenging his claim for unemployment benefits. Doc. #44, at 52. Defendant argues Plaintiff is asserting this claim for the first time, and he also failed to exhaust his administrative remedies with regard to this claim. Alternatively, Defendant argues this claim is without merit.

The liberal pleading standard requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In the Petition, Plaintiff alleges his protected activities included "openly oppos[ing] the false accusation of harassment," and opposing discriminatory practices. Doc. #1-1, ¶¶ 14, 46. Plaintiff does allege he opposed the false accusation of harassment or opposed discriminatory practices when applying for unemployment benefits. He does not allege Defendant retaliated against him by challenging Plaintiff's claim for unemployment benefits. In fact, there is no mention of application for, opposition to, or denial of unemployment benefits in the Petition. And although he alleges he was subjected to "retaliatory conduct in the form of lost benefits and privileges at work," Plaintiff does not allege lost benefits outside of work, such as

14

unemployment benefits.  *Id.*, ¶ 19.  While Plaintiff gave Defendant fair notice he was bringing a claim of retaliation, Plaintiff did not set forth Defendant's challenge to his claim for unemployment benefits was one of the bases for the retaliation.  As such, Defendant was not given fair notice of this particular retaliation claim.  For this reason alone, this claim must be dismissed.

Even if Plaintiff sufficiently pleaded this particular retaliation claim, he failed to administratively exhaust it.  Although his claim for unemployment benefits was challenged and decided prior to the filing of his charge of discrimination, Plaintiff did not allege Defendant retaliated against him by challenging his claim for unemployment benefits.  Doc. #41-14, at 2.  Similar to his Petition, there is no mention of application for, opposition to, or denial of unemployment benefits in the charge of discrimination.  *Id.*  Even when liberally interpreting the charge of discrimination, as the Court must do, this particular retaliation claim is not reasonably related to the allegations in the charge.  For this additional reason, this claim must be dismissed.

Even if Plaintiff properly pleaded this claim and administratively exhausted this claim, the claim fails on the merits.  To satisfy the first element of a retaliation claim, Plaintiff must engage in a protected activity in that he complained of discrimination or another practice prohibited by the MHRA.  *Shirrell*, 793 F.3d at 886.  Plaintiff alleges he opposed discriminatory treatment when he filed for unemployment benefits.  But Plaintiff presents no evidence establishing this purported fact.  No evidence has been presented establishing what Plaintiff told the Division of Employment Security.  *See* Doc. #44-14, at 9-10.  As such, there is no evidence establishing Plaintiff engaged in a protected activity when he filed a claim for unemployment benefits.  Because Plaintiff cannot satisfy this element of his claim, Defendant's motion for summary judgment on this claim is granted.

Finally, even if Plaintiff could establish he engaged in a protected activity when he filed a claim for unemployment benefits by complaining about discriminatory treatment, his claim still fails.  Plaintiff does not set forth any evidence that his alleged protected activity was a contributing factor in Defendant's decision to challenge Plaintiff's claim for unemployment benefits.  For this additional reason, the Court grants Defendant's motion for summary judgment on this retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied with regard to all of Plaintiff's race discrimination claims, granted with regard to all of Plaintiff's age discrimination claims, granted with regard to Plaintiff's claim that his suspension was retaliatory, denied with regard to Plaintiff's retaliation claim based upon Defendant's alleged failure to investigate or take action to curtail Plaintiff's lengthy suspension, denied with regard to Plaintiff's retaliation claim based upon his vacation allotment, and granted with regard to Plaintiff's retaliation claim based upon Defendant's challenge to his claim for unemployment benefits.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: February 6, 2018 UNITED STATES DISTRICT COURT